Yeates J.
I concur in the opinion which has been de *245 livered. I think the cause went properly to the jury and that the law was correctly stated to them by the Chief Justice. The bill of lading for the tobacco and sugar, which went to Cadiz, consigned to Nichard Meade, was dated 2d November 1807, and the assignment was made to the plaintiffs, for a highly meritorious consideration, on the 20th February following. They informed Meade hereof by letter dated 26th of the same month. It is true, that it was unaccompanied by any certified copy of the assignment, invoice or bill of lading, or by any letter from Barker and Annesley on the subject. Such a measure would have been prudential, but I am not sensible that it was absolutely necessary. The possession of the articles at Cadiz beyond sea was consistent with the assignment. I can see no circumstances in this case, from which I can feel myself warranted to infer a legal fraud within the true meaning of the statute of 13 Eliz. And as to actual fraud in the plaintiffs during any part of the transactions, it has not been insinuated against the plaintiffs by the counsel of the defendant. If the general creditors of Barker and Annesly have been deceived by the representations of themselves or others, they cannot attribute the deception to the plaintiffs.
I am of opinion that judgment be rendered for the plaintiffs upon the verdict.
Brackenridge J.
It cannot be contended but that more might have been done in this case, to give publicity to the interest which the plaintiffs had acquired in the property of their debtor by a special assignment previous to the *assignment made for the use of the creditors generally. The property being insui’ed, and the policies of insurance delivered to them, they could have had notice of this assignment placed in the office in some way, for the use of those who might conceive themselves to have an interest in this property. They might have obtained a writing by letter signed by the debtor, and accompanying the assignment to themselves, which letter so signed with the handwriting of the debtor, they could have transmitted with a duplicate, at least a copy of the assignment to themselves, to the consignee of the property abroad in whose hands it was. They could at least have transmitted to the consignee abroad a duplicate of their own letter. A presumption arises that they had not used due diligence or care in transmitting their own letter, since it appears not to have been received, at least not in due time; not until the property had passed out of the hands of the consignee abroad to a third party.
*246 But on finding that the property had passed out of the hands of the consignee abroad, and that the debtor interfered' with it in such a manner as to impede the payment that was intended, and to baffle the special assignees' in recovering satisfaction from this fund, perhaps greater publicity might have been given to this amongst merchants, than would seem to have been done. They could not well but have heard that creditors were meeting, and that a general assignment was spoken of long previous to the time it took place. This would have prevented that undue advantage which one of them would seem to have taken of the others, from his knowledge of a particular property in a distant place, and which by attachment he secured for himself. The question will be, shall this want of vigilance, this defect of diligence, this neglect, amount to such gross negligence, as will bar in equity the lien which they had on the special fund, and turn them round to take fro rata amongst the general creditors? In other words, whether it will amount to what in law is called a constructive fraud. Bid they suffer the debtor to continue in the visible possession of this whole fund, covered by their policy, so as to give him a false credit during the time from the special assignment? The inclination of my mind has been that they did, and in consequence of this, might justly be considered as having lost the lien which their Special assignment gave them. Considerations of general policy would seem to me to warrant this. Sic utere tuo ut alienum non Icedas. The strictness to which the law has been carried in case of levies made under prior and subsequent writs of execution, where the possession of the property levied on has not been immediately or visibly changed, would by analogy seem to bear upon this. Hence it is, that I would have been much better pleased to have had the verdict the other way ; and if the majority of the Court had been willing to have gone the length of a new trial, I would have gone with them with more satisfaction and acquiescence of mind, than in giving judgment on the verdict.
New trial refused, and Judgment for plaintiffs.
[Cited in 5 S. & R. 285; 5 W. 485; 2 Wh. 306; 12 H. 12; 6 C. 542; 3 Phila. 178.]